UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Robert A. Anderson, | Civ. No. 20-1147 (KMM/LIB) |
| Plaintiff, | |
| v. | |
| William Vanden Avond, acting in his individual capacity as a Morrison County Sheriff's Deputy, | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE REGARDING EXPERT TESTIMONY** |
| Defendant. | |

---

Defendant William Vanden Avond retained two experts in this case: Michael Shain, who offered opinions about the projectile with which Plaintiff Robert Anderson was shot, and Defendant's distance from Robert when firing; and Michael Brave, a police-practices expert. Each offered certain opinions in their expert reports served under Federal Rule of Civil Procedure 26(b)(2)(B). Robert now moves to exclude at trial portions of their testimony or anticipated testimony, as set forth below.

*Legal conclusions*. Brave submitted a 79-page expert report. *See* Betinsky Decl. Ex. A. Though he purports to recognize that questions of law are "the exclusive carefully guarded domain of the Court," *id.* at 2, he offers three pages of discussion regarding case law and why Defendant is "entitled to qualified immunity" under those cases. *Id.* at 24-26. This is improper, and Brave must not be allowed to so testify.

"Whether qualified immunity is appropriate from a particular set of facts is a legal determination." *Smith v. K.C. Police Dept.*, 586 F.3d 576, 579 (8th Cir. 2009) (citation omitted). It is not for Brave to decide (or opine) whether Defendant is entitled to qualified immunity, or even for the jury to do so. It is the Court's decision and the

Court's alone. Brave, therefore, should not be allowed to offer testimony on this issue because it would not be helpful to the jury, which decides only facts. This is why cases recognize that an expert may not offer a "statement of a legal conclusion" such as an entitlement to qualified immunity. *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995); *accord, e.g.*, *Johnson v. Ball*, No. 4:13CV586 TIA, 2015 WL 1061564, at *2 (E.D. Mo. Mar. 11, 2015) ("expert testimony offering an opinion with respect to … qualified immunity is improper because it invades the province of the court").

Similarly, Brave offers the opinion that Defendant's shooting was "appropriate," Betinsky Decl. Ex. A at 73 – another way to say it was lawful, or in Fourth Amendment parlance, reasonable. In slightly different verbiage, he likewise claims the shooting "was consistent with … legal mandates." *Id.* at 74. These, too, are legal conclusions about which Brave must not be permitted to testify. Indeed, it has long been recognized in excessive-force cases that an expert "may not testify as to whether the officers' force was excessive or reasonable under the Fourth Amendment or otherwise failed to meet legal standards." *Jones v. City of St. Paul*, No. CV 20-707 (DSD/ECW), 2022 WL 2375777, at *6 (D. Minn. June 30, 2022); *accord, e.g.*, *Peterson*, 60 F.3d at 475.

<u>Opinion evidence regarding aim</u>.  In his report, Brave opines that Defendant "aimed at Zone 2" when he fired. Betinsky Decl. Ex. A at 74. Though Brave does not state how he reached that opinion, it can have come from only two sources: Defendant's

(inconsistent) testimony that he aimed at Zone 2, or Brave's analysis of the video evidence of the shooting. Either way, this opinion is not properly placed before the jury.[1]

"The touchstone for the admissibility of expert testimony is whether it will assist or be helpful to the trier of fact." *Lee v. Andersen*, 616 F.3d 803, 808 (8th Cir. 2010) (quoting *McKnight v. Johnson Controls, Inc.*, 36 F.3d 1396, 1408 (8th Cir. 1994)). Because determining the facts is the exclusive province of the jury, experts may not offer opinions that purport to resolve factual disputes. *Id.* at 809. Expert testimony analyzing or interpreting objective evidence that is within the jury's knowledge and experience is the quintessential example of unhelpful, and impermissible, fact testimony. *Id.* In *Lee*, the plaintiff brought a Section 1983 suit on behalf of her son, Fong Lee, who was shot and killed by a police officer. *Id.* at 806-07. The Eighth Circuit excluded an expert's testimony that, based on his interpretation of the video evidence, Lee did not have a gun in his hand when the officer shot him. *Id.* at 808-09. Because "the jury was entirely capable of analyzing the images and determining whether [Lee] had anything in his hands," such testimony "would not have assisted the jury but rather would have told it what result to reach." *Id.* at 809.

For these reasons, to the extent Brave's opinion as to where Defendant aimed is based on his review of the video, it simply is not admissible.[2] The jury is fully capable—and has the exclusive right—to make fact determinations based on the video evidence.

---

[1] Moreover, as explained in Robert's trial brief and proposed jury instructions, Defendant's aim-point is a matter of his subjective intent on which the Fourth Amendment analysis does not turn.

[2] Equally inadmissible is Brave's exposition about what he believes the dashcam video shows, discussed in detail on page 74 of his expert report.

Just as the expert in *Lee* could not analyze the video evidence to opine on whether Lee was holding a gun, Brave cannot analyze the video evidence to opine on where Defendant was aiming. As the Court explained in *Elex v. Glirbas*, a police-practice expert "may not testify about his interpretation of the squad videos, because he has no special expertise in interpreting video images. Analyzing video images is within the jury's knowledge and ability, thus [expert] analysis of the videos would not assist the jury." No. CIV. 12-3206 (ADM/JJK), 2014 WL 2462811, at *8 (D. Minn. May 29, 2014). Moreover, the testimony should be excluded under Federal Rule of Evidence 403 because it could sway the jury to give undue weight to Brave's interpretations of the evidence. Brave's law-enforcement experience places him in no better position than the jury to evaluate video evidence. *See, e.g., Hoekman v. Educ. Minn.*, 335 F.R.D. 219, 241 (D. Minn. 2020) ("[W]here the subject matter is within the jury's knowledge or experience, permitting an expert to testify about the subject matter improperly lends an expert's 'aura of expertise' to the subject, which in turn prejudices the opponent of the testimony") (quoting *United States v. Arenal*, 768 F.2d 263, 269-70 (8th Cir. 1985)).

The same is true even if Brave's opinion is based on Defendant's testimony about where he aimed. For much the same reasons experts cannot opine on disputed facts, experts cannot evaluate the credibility of witness testimony. "Making credibility determinations is the exclusive role of the jury, and a jury is capable of making such determinations without the aid of an expert." *Elex*, 2014 WL 2462811, at *8 (citing *United States v. Kime,* 99 F.3d 870, 884 (8th Cir. 1996)). It is therefore well-settled "that experts are not permitted to offer opinions as to the believability or truthfulness" of

4

witnesses. *Jordan v. City of Chicago*, No. 08 C 6902, 2012 WL 88158, at *4 (N.D. Ill. Jan. 11, 2012). Expert testimony regarding a person's state of mind falls into this category. As the court explained in *Lombardo v. Saint Louis City*, No. 4:16-CV-01637-NCC, 2019 WL 414773, at *10 (E.D. Mo. Feb. 1, 2019), a police-practice expert may not "speculate[] about . . . whether [plaintiff] intentionally or unintentionally kicked an officer, such testimony invades the province of the jury and will be excluded." Likewise in *Sloan v. Long*, No. 4:16 CV 86 (JMB), 2018 WL 1243664, at *4 (E.D. Mo. Mar. 9, 2018), the court held that a police-practice expert's "conclusion that plaintiff was compliant and unlikely to be attempting to strike Deputy Butler improperly assesses the credibility of the witnesses and invades the province of the jury."

So too here. Brave cannot testify that Defendant intended to shoot (*i.e.*, aimed for) Zone 2 because Defendant said so. Likewise, Brave may not testify about Defendant's so-called "concern" that Robert "would escalate the situation to cause the officers to resort to the use of rifles." Betinsky Decl. Ex. A at 74. Brave simply cannot get into Defendant's head. Any testimony on such topics must be excluded.

Furthermore, even where an expert does not opine directly on credibility, expert opinions are subject to exclusion where "they are intertwined inextricably with, and rest entirely on, improper credibility determinations." *Jordan*, 2012 WL 88158, at *3-4. In *Jordan*, the plaintiff in a police misconduct case retained a police-practices expert. *Id.* at *3. After reviewing the record, the expert accepted the plaintiff's version of events and opined that the defendant officers' actions were not reasonable or justified. *Id.* The court rejected plaintiff's argument that the opinions were "not credibility determinations *per se*,

5

but are rather expert opinions based on Plaintiff's version of the facts." *Id.* at *4. As the court explained, "[i]t is simply not feasible to extract non-credibility opinions from the credibility opinions in [the expert's] report given that the entire report is premised on his evaluation of which witnesses are believable." *Id.* at *6. "His conclusions, therefore, are inextricably intertwined with his credibility determinations and are not . . . merely based on factual assumptions." *Id.* Relying on *Jordan*, Judge Tunheim reached the same conclusion in *Thomas*:

> As in Jordan, much of Lego's testimony is at least phrased in a way that makes no distinction between his opinion of what, assuming that the facts occurred as Barze described them, **would have been** appropriate and what **was** appropriate. At no point in his report does Lego establish that his opinions are based on an **assumption** that Barze and Mills' version of the facts is true, but rather, he repeatedly presents his opinions **based on** a version of the facts that appears to be his own conclusions about what occurred. Thus, his testimony is more comparable to an "expert testifying that a disputed fact actually occurred or that one witness is more credible than another," rather than "an expert giving an opinion based upon factual assumptions, the validity of which are for the jury to determine."

57 F. Supp. 3d at 1061 (citation omitted). The same result should obtain here.

*Undisclosed opinions.* Lastly, Robert moves to exclude any undisclosed opinions by Brave or Shain. The Federal Rules of Civil Procedure require extensive disclosures by expert witnesses "retained or specially employed to provide expert testimony in the case." Fed. R. Civ. P. 26(a)(2)(B). These include a "written report" containing "(i) a complete statement of all opinions [he] will express and the basis and reasons for them; (ii) the facts or data considered by [him] in forming them; [and] (iii) any exhibits that will be used to summarize or support them." Fed. R. Civ. P. 26(a)(2)(B)(i)-(iii). The purpose of requiring a specially retained expert to provide such a disclosure is to "eliminate

6

surprise." *Tenbarge v. Ames Taping Tool Sys., Inc.*, 190 F.3d 862, 865 (8th Cir. 1999). And for that reason, such experts may not fundamentally alter or bolster their opinions after their written reports – even by supplementing those reports under Rule 26(e).  *See, e.g.*, *SD3, LLC v. Rea*, 71 F. Supp. 3d 189, 194-95 (D.D.C. 2014).

Though Robert cannot say for sure whether Defendant intends to offer new, previously undisclosed opinions or evidence via his experts, his proposed exhibits strongly intimate that is the case.  For example, his proposed exhibit D-37 (Betinsky Decl. Ex. D) appears to be a printout from the Internet website cars.com, which contains car-length information he presumably wishes to use with Shain to discuss Defendant's distance from Robert when he fired—an issue on which Shain opines at some length.  *See* Betinsky Decl. Ex. B at 9-16.  But Shain did not previously disclose this cars.com information (or any other vehicle information) as "facts or data considered by [him] in forming" his opinions, or as a "basis" for those opinions.  Nor did he include the cars.com printout as an exhibit with his expert report.[3]

Similarly, Defendant's proposed exhibits D-26 and D-27 appear to be slow-motion videos of a beanbag round hitting a mock target.  Betinsky Decl. Exs. F, G.  But while Shain included those videos when he tendered his expert report, the report contains *no* mention of them, nor any analysis or discussion.  There is no way to discern from Shain's report, in other words, exactly how Defendant intends to use these videos, or even if they depict a similar environment to that in which Defendant fired.  Who prepared or recorded

---

[3] As Robert noted in his separate motion *in limine* regarding cars.com, the printout contains hearsay and concerns the wrong model-year vehicle, two independently sufficient reasons to exclude it.

7

the videos? Was the distance the same? Was it the same weapon? What was the target composed of? Shain included none of that information—or *any* information—about the videos with his expert report. Betinsky Decl. Ex. B. He cannot provide such "facts or data" or "basis" for his opinions now. Fed. R. Civ. P. 26(a)(2)(B).

These are simply examples, but the principle remains the same even if Defendant simply asks his experts questions on topics straying beyond the four corners of their expert reports. Defendant should not be permitted to offer new or undisclosed expert opinions—or new facts or data on which they are based—at trial.

**ROBINS KAPLAN LLP**

Dated: July 10, 2023

By: *s/Marc Betinsky*
Robert Bennett, #0006713
Andrew J. Noel, #0322118
Kathryn H. Bennett, #0392087
Marc Betinsky, #0388414
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
612-349-8500
rbennett@robinskaplan.com
anoel@robinskaplan.com
kbennett@robinskaplan.com
mbetinsky@robinskaplan.com
*Attorneys for Plaintiff*