UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert A. Anderson,<br><br>              Plaintiff,<br>v.<br><br>William Vanden Avond, acting in his individual capacity as a Morrison County Sheriff's Deputy,<br><br>              Defendant. | Civ. No. 20-1147 (KMM/LIB)<br><br>**MEMORANDUM IN SUPPORT OF IMPEACHMENT WITH PRIOR FACTUAL ASSERTIONS IN COURT FILINGS** |

      Plaintiff Robert Anderson intends to use assertions in Defendant William Vanden Avond's summary-judgment brief to impeach his testimony at trial. This is appropriate and should be permitted.

      As the Court noted with respect to Defendant's own BCA interview, an opposing party's "statement" is not hearsay. Fed. R. Evid. 801(d)(2)(A). A "statement," however, need not be verbal. Fed. R. Evid. 801(a). Written statements are just as much non-hearsay as oral ones. *Id.* And that includes written statements made during the litigation process: courts routinely recognize that assertions made by a party in pleadings and motion papers, including summary-judgment memoranda, are "evidentiary admissions," admissible under Rule 801 just like any other statement of a party-opponent. *See, e.g., Woods v. City of Chicago*, 234 F.3d 979, 989 (7th Cir. 2000) ("An admission includes anything which is in practical fact an admission, including statements made in a brief.") (cleaned up); *Overcash v. Kinsey (In re Big Drive Cattle, L.L.C.)*, Case No. 4:15CV3039, 2016 WL 1270987, at *5 (D. Neb. March 30, 2016); *Feld v. Primus Techs. Corp.*, No. 4:12-CV-01492, 2015 WL

2357082, at *1-2 (M.D. Pa. May 15, 2015); *Ams. United for Separation of Church & State v. Prison Fellowship Ministries*, 395 F. Supp. 2d 805, 808-09 (S.D. Iowa 2005); *Advanced Med., Inc. v. Arden Med. Sys., Inc.*, Civ. A. No. 87-3059, 1989 WL 60424, at *1 (E.D. Pa. June 5, 1989).[1]  It makes no difference that the assertion comes from the mouth (or the keyboard) of the party's counsel rather than the party himself.  *See, e.g., Feld*, 2015 WL 2357082, at *2 (statements by counsel in memoranda filed during course of the litigation could properly be considered by jury as party's evidentiary admissions); *First Fin. Bank, N.A. v. Bauknecht*, 71 F. Supp. 3d 819, 832 (C.D. Ill. 2014) (statements in letter written by party's attorney treated as admissible non-hearsay party statements); *see also* Fed. R. Evid. 801(d)(2)(D) (statements made by party's agent within scope of agency are considered party statements).  The rationale behind allowing admission of this type of evidence at trial was aptly explained in *Americans United*:

> Admissions made by a party, by formal means, in an adversarial process closely ... scrutinized by experienced attorneys, should not be lightly discarded on the grounds such admissions were made for the purposes of summary judgment. If not made as a mere concession for the sake of argument, such statements are, after all, supposed to be the truth. If not, judicial proceedings at any stage are meaningless.

395 F. Supp. 2d at 809.

Here, Defendant's summary-judgment brief undermines the defense he has presented and the picture he is trying to paint for the jury.  Indeed, at trial, Defendant's

---

[1] In contrast to *judicial* admissions, which are binding, evidentiary admissions can be controverted or explained by the party against whom they are offered.  *See Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995).

position on training has changed dramatically from factual statements he made in his Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 33).

Take, for example, the following from Defendant's summary-judgment brief:

> Having undergone less-lethal training, Vanden Avond also knew the body was divided into three zones of impact. *Depo. Vanden Avond, 46:24-47:3, 58:2-4.*
>
> 14
>
> ---
>
> CASE 0:20-cv-01147-KMM-LIB   Doc. 33   Filed 01/06/22   Page 15 of 36
>
> 
>
> *Decl. Angolkar: Ex. 15: Safariland Training, pp. 3-5.* He also knew targeting Zone 3

Dkt. No. 33 at 14-15.  As the Court knows, the colored human-body diagrams above come from Plaintiff's exhibit P-100, which Defendant now claims he hadn't seen prior to the shooting.  But there is only one rational way to interpret the above assertions from Defendant's brief:  the target zones depicted were those on which Defendant had "undergone less-lethal training" before the shooting.  Indeed, Defendant claimed that he

"knew" (past tense), after "having undergone less-lethal training," that "the body was divided into three zones of impact," and then immediately after these assertions, provided the above diagrams of those three zones. What else could Defendant possibly have meant, other than that he "knew" *at the time of the shooting* these diagrams were the ones establishing the zones on which he was trained?

Lest there have been any doubt, just one page later, Defendant asserted:

> CASE 0:20-cv-01147-KMM-LIB   Doc. 33   Filed 01/06/22   Page 16 of 36
>
> *Decl. Angolkar: Ex. 16: Former Target*. Regardless, Vanden Avond knew where each zone was located. He explained Zone 2 was the "[a]bdominal area, just above the hips." *Depo. Vanden Avond, 47:2-3*. He also knew the center mass area, going down from the armpits to the bottom of the rib cage, was in Zone 3. *Id., 57:28-58:4*. Similarly, Vanden Avond was aware the lower chest was in Zone 3. *Id., 87:7-9*; *see Decl. Angolkar: Ex. 17: Depo. Prince, 59:17-22*.
>
> Consistent with this knowledge, Vanden Avond aimed for the abdomen. *Depo. Vanden Avond, 21:22-23, 87:20*. When Plaintiff exposed Zone 2 down to his

*Id.* at 16. Defendant, through various witnesses, has presented trial testimony that Morrison County deputies were *not* trained on the chest being within deadly-force-only Zone 3. Yet, his summary-judgment brief asserted that he *knew* the chest was in that zone – after all, if the lower chest was in Zone 3, then the upper chest must have been, too – and that he acted "consistent with this knowledge" when he fired.

4

Given this, it would have been appropriate for Plaintiff to offer as *substantive evidence* the contradictory assertions Defendant made in his summary-judgment brief, as they are clear evidentiary admissions by a party opponent under Rule 801(d)(2). Indeed, the above factual statements are wholly contrary to what has been offered at trial. The zone depictions are precisely the ones reflected in P-100—the zones Defendant now seek to disclaim to best serve his trial strategy.[2] Nevertheless, Plaintiff does not intend to go that far; rather, he plans to use the contrary assertions Defendant made in his earlier memorandum only to impeach his trial testimony. Not allowing these assertions to now be used for impeachment would result in a manifest injustice—and render the summary-judgment proceedings meaningless. *Ams. United*, 395 F. Supp. 2d at 809.

Respectfully submitted,

Dated: August 6, 2023

s/*Andrew J. Noel*
Robert Bennett, #0006713
Andrew J. Noel, #0322118
Kathryn H. Bennett, #0392087
Marc Betinsky, #0388414
**ROBINS KAPLAN LLP**
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
612-349-8500
rbennett@robinskaplan.com
anoel@robinskaplan.com
kbennett@robinskaplan.com
mbetinsky@robinskaplan.com
*Attorneys for Plaintiff*

---

[2] Notably, Defendant's summary-judgment brief was filed when Plaintiff's failure-to-train claim was still at issue, and in response to that brief, Plaintiff voluntarily dismissed the training claim—after all, as of Defendant's filing, it was undisputed he was properly trained on the target zones, and Plaintiff reasonably relied on those assertions in abandoning the claim. Had Plaintiff known Defendant was going to "untrain" himself between summary judgment and trial, he would not have agreed to voluntarily dismiss his training claim.

5